USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-28-09

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JESSE ROSEN,                        :
                                    :
                    Plaintiff,      :     07 Civ. 6018 (VM)
                                    :
          - against -               :     DECISION AND ORDER
                                    :
THE CITY OF NEW YORK et al.,        :
                                    :
                    Defendants.     :
                                    :
------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff Jesse Rosen ("Rosen") brought this action against defendants the City of New York (the "City"); New York City Health and Hospitals Corporation; Prison Health Services, Inc.; New York City Department of Correction Commissioner Martin Horn ("Horn"); Corrections Officer Dennis Hlatky ("Hlatky"); Captain Yvette Ballard ("Ballard"); and John Doe, M.D., name being fictitious and unknown (collectively "Defendants"), claiming that Defendants violated his rights under the Eighth and Fourteenth Amendments of the United States Constitution, and seeking damages and declaratory relief pursuant to 42 U.S.C. § 1983 ("§ 1983") and 22 U.S.C. § 2201. Rosen also asserts state law claims of assault, battery, medical malpractice, negligence, and violation of New York State Correctional Law §§ 500(K) and 137(5). Defendants move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), arguing that (1) the claims made pursuant to § 1983 fail as a matter of law; (2)

Defendants are entitled to qualified immunity from suit under federal and New York law; and (3) in the absence of any viable federal claims, the state law claims must be dismissed. For the reasons stated below, Defendants' motion for partial summary judgment is GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

This action arises out of events that occurred at the New York City correctional facility on Rikers Island ("Rikers") in June 2006. Rosen was admitted to Rikers as a pre-trial detainee on June 10, 2006.[2] On June 17, 2006, Rosen was transported from Rikers to Queens Criminal Court for an appearance. When Rosen returned to Rikers that evening, he discovered that food items were missing from his locker. After talking with other inmates, Rosen concluded that an inmate named Joseph Campbell ("Campbell") had stolen his food.

---

[1] The factual summary that follows derives primarily from the following documents, and any exhibits or declarations submitted therewith: Amended Complaint, dated July 2, 2008; Answer to Amended Complaint, dated August 27, 2008; Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, dated May 1, 2009; and Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated June 15, 2009 ("Pl.'s 56.1"). Except where specifically referenced, no further citation to these sources will be made.

[2] In their respective statements of undisputed fact, Defendants and Rosen both assert that Rosen was admitted to Rikers on June 10, 2007. This is inaccurate, as Rosen was discharged from Rikers in January 2007 and the events that are the subject of this litigation took place in June 2006.

Rosen complained to a corrections officer, and fearing that theft would become a recurring problem, asked to be transferred to another housing unit.

Several days later, June 21, 2006, was commissary day for Rosen's dorm, meaning that Rosen would have the opportunity to purchase more food. On that morning, prior to commissary, Campbell approached Rosen and threatened to harm him if he did not give Campbell the food that he planned to purchase.[3] Rosen complained to a corrections officer and again asked to be moved. The officer responded that Rosen should take up the issue with the afternoon shift. Rosen could not identify the officer to whom he spoke on June 17 or June 21, but testified at his deposition that he did not speak to Hlatky on either occasion. (See Declaration of Steve Stavridis in Support of Defendants' Motion for Summary Judgment, dated May 1, 2009, Ex. L at 69:14, 80:12.)

Later that day, Campbell confronted Rosen and threatened to kill him, prompting Rosen to hit Campbell in the face. The two began to fight, and according to Rosen, at least four other inmates joined, all of them hitting and kicking Rosen. The altercation lasted approximately five minutes.

The factual disputes in the case revolve around Hlatky's

---

[3] Rosen disagrees with Defendants' claim that Campbell merely threatened him with physical harm, and contends that Campbell said, "you're going to give me and the homies your commissary or I am going to [expletive] kill you." (Pl.'s 56.1 ¶ 18.)

actions during the fight. Defendants contend that the first time Rosen observed Hlatky was after the altercation, by the doorway. Rosen disagrees, alleging that he saw Hlatky as soon as he broke free from the fight. Rosen argues that Hlatky had an unobstructed view of the fight, but does not know how long Hlatky may have been observing. Defendants also allege that Hlatky ordered Campbell and Rosen to stop fighting; Rosen disagrees with that characterization, stating that Hlatky did nothing except to "shout once to break it up." (Id. Ex. K at 27:25-28.)

As a result of the fight, Rosen suffered significant injuries including multiple facial fractures. Rosen now seeks damages and declaratory relief.

## II. DISCUSSION

A.  LEGAL STANDARD

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing

reasonable inferences against the moving party." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986). The moving party bears the burden of demonstrating that no genuine issue of material fact exists or that, due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. <u>See</u> <u>Gallo v. Prudential Residential Servs., L.P.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994).

B.  <u>WITHDRAWN CLAIMS</u>

In his opposition to Defendants' motion, Rosen states that he is withdrawing (1) all claims against the City made pursuant to § 1983; (2) constitutional claims against Defendants for deliberate indifference to his medical condition; and (3) all claims against Ballard and Horn. Therefore, with respect to these claims, Defendants' motion for summary judgment is granted.

C.  <u>SECTION 1983 CLAIM BASED ON DELIBERATE INDIFFERENCE TO SAFETY</u>

Rosen claims that Hlatky violated his rights under the Eighth and Fourteenth Amendments by acting with deliberate indifference to his safety, entitling Rosen to relief pursuant to § 1983.[4] To prevail on a § 1983 claim, the plaintiff must

---

[4] The Court points out that because the alleged incident occurred when Rosen was a pre-trial detainee, the instant action is governed by the Due Process Clause of the Fourteenth Amendment, and not the Eighth Amendment. <u>See</u> <u>City of Revere v. Mass. Gen. Hosp.</u>, 463 U.S. 239, 244 (1983) ("[T]he state does not acquire the power to punish with which the Eighth Amendment

show that, while acting under color of state law, the defendants deprived him of federal constitutional or statutory rights. See McKithen v. Brown, 481 F.3d 89, 99 (2d Cir. 2007). "Allowing an attack on an inmate to proceed without intervening is a constitutional violation in certain circumstances." Baker v. Tarascio, No. 3:05-CV-548, 2009 WL 581608, at *4 (D. Conn. Mar. 6, 2009) (citing Davidson v. Cannon, 474 U.S. 344, 347-48 (1986)); see also Morales v. New York State Dep't of Corr., 842 F.2d 27, 30 (2d Cir. 1988). Specifically, failing to intervene is a Fourteenth Amendment violation where the officer acted with "deliberate indifference to a substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (internal quotation marks omitted).

In the context of a failure to intervene claim, "[a]n officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene." Baker, 2009 WL 581608, at *4 (citing Stubbs v. Dudley, 849 F.2d 83, 86-87 (2d Cir. 1988)). Courts divide the deliberate indifference inquiry into two parts, one

---

is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." (quoting Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977)). Because a pre-trial detainee's constitutional rights are at least as great as those of a prisoner, the Due Process Clause protections afforded to Rosen are coextensive with those afforded by the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 545 (1979).

objective and the other subjective. See, e.g., Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). To satisfy the objective prong of the inquiry, an inmate must show that the alleged condition was "sufficiently serious," and constituted an "unquestioned and serious [deprivation] of basic human needs" or a denial of the "minimal civilized measure of life's necessities." Wilson v. Seiter, 501 U.S. 294, 298-309 (1991) (internal citations and quotation marks omitted); see also Phelps v. Kapnolas, 308 F.3d 180, 185-86 (2d Cir. 2002). The subjective prong of the deliberate indifference inquiry requires that the charged official "act with a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "The required state of mind, equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (internal citation and quotation marks omitted).

Taking the objective and subjective elements into account, a failure to intervene claim succeeds where the plaintiff shows:

> (1) that [the officer] observed or had reason to know that the Plaintiff was involved in a physical altercation with another inmate;

>    (2) that [the officer] had a reasonable opportunity to intervene to prevent the attack from continuing. A reasonable opportunity to intervene means that the attack must have been of sufficient duration that an officer present at the scene would have had a reasonable opportunity to attempt to prevent the attack from continuing. However, in circumstances where a corrections officer reasonably concludes that further intervention would threaten the health and safety of all concerned, including correctional staff, his failure to intervene is not a constitutional violation;
>
>    (3) that in failing to intervene [the officer was] deliberately indifferent to a substantial risk of harm to Plaintiff; and
>
>    (4) that [the officer's] deliberate indifference to a substantial risk of harm was a risk that caused Plaintiff some harm. In order to show sufficient harm to constitute a constitutional violation, Plaintiff need not prove that he suffered a serious physical injury, but only that he suffered some injury beyond a most minor one.

Williams v. Russo, No. 01-CV-6401, 2009 WL 185758, at *4 (W.D.N.Y. Jan. 26, 2009).

Considering this fact-intensive inquiry, Defendants cannot satisfy their burden of proving that no genuine issue of material fact exists. First, there is an issue of fact as to what, if anything, Hlatky saw of the fight. Defendants assert that Rosen did not observe any officers while the fight was taking place, but Rosen alleges he saw Hlatky in a position where Hlatky could see the fight. Second, if Hlatky observed the fight, as Rosen alleges, there is a dispute as to how long Hlatky was watching the fight, and whether he had a reasonable opportunity to intervene, giving due consideration

to his own safety. See Pearson v. Correction Officer Principe, No. 97 Civ. 3746, 1999 WL 66521, at *1 (S.D.N.Y. Feb. 9, 1999) ("Perhaps, [the officer] can offer a plausible explanation for the failure to intervene in a timely fashion, assuming that the plaintiff's version of events is accurate. But, the plausibility of any explanation is an issue of fact for the jury."). The parties disagree as to the character of the fight; although Rosen asserts that he was beaten by a group of gang members, Defendants describe the fight as between only Campbell and Rosen. Without resolving that factual dispute, it is impossible for the Court to assess the danger posed to other inmates and Hlatky in deciding whether he had a reasonable opportunity to intervene.

Third, if Hlatky did have a reasonable opportunity to intervene, and failed to do so, there is a factual question as to whether Hlatky's inaction rose to the level of deliberate indifference. See Stubbs, 849 F.2d at 86 (holding that jury could have reasonably found officer displayed deliberate indifference where he failed to "prevent the beating of [the plaintiff] despite having had the opportunity to do so"). Finally, if Hlatky was deliberately indifferent, a factual question exists as to whether his deliberate indifference caused at least some of Rosen's injury. Accordingly,

Defendants' motion for summary judgment must be denied with respect to Rosen's deliberate indifference to safety claim brought pursuant to § 1983.

D.   STATE LAW CLAIMS

Defendants argue that the Court should grant summary judgment as to the state law negligence claims against Hlatky and the City. It is well settled under New York law that a corrections officer owes a duty of care to an inmate. See Sanchez v. State of N.Y., 784 N.E.2d 675, 678 (2002). However, "[l]ike other duties in tort, the scope of the State's duty to protect inmates is limited to risks of harm that are reasonably foreseeable." Id. Therefore, "[t]o obtain summary judgment, the [defendants] must meet a high threshold: there must be only one conclusion that can be drawn from the undisputed facts -- that as a matter of law injury to [plaintiff] was not reasonably foreseeable." Id. at 680. Here, parties dispute material facts regarding Hlatky's whereabouts and his knowledge of the fight, preventing the Court from determining as a matter of law that Rosen's injury was not reasonably foreseeable. Accordingly, Defendants' motion to dismiss is denied as to the negligence claims against Hlatky and the City.[5]

---

[5] Defendants did not move for summary judgment on Rosen's state law claims for assault, battery, medical malpractice, or violation of New York correctional law, asking for their dismissal in the event that the Court granted Defendants' summary judgment as to Rosen's federal claims. See

E.   IMMUNITY FROM SUIT

   1.   Qualified Immunity

Defendants argue that even if the Court does not grant their motion as to the § 1983 claims, it should find that Defendants are entitled to qualified immunity from suit. The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages under federal claims insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Wilson v. Layne, 526 U.S. 603, 609 (1999); Ayers v. Ryan, 152 F.3d 77, 82 (2d Cir. 1998). Qualified immunity should be decided at the earliest possible opportunity in order to relieve public officials of the burden of participating in a lawsuit. See Pearson v. Callahn, 129 S. Ct. 808, 815 (2009). A government official is entitled to qualified immunity when "(1) Plaintiff fails to allege a violation of a federal right; (2) the right alleged was not clearly established at the time of the alleged violation; or (3) the Defendant's actions were objectively reasonable in light of the legal rules that were clearly established at the time it was taken." Burns v. Citarella,

---

Marcus v. AT&T Corp.,138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Having denied Defendants' motion with respect to at least one federal claim, the Court retains jurisdiction over the state law claims.

-11-

443 F. Supp. 2d 464, 469 (S.D.N.Y. 2006) (citing Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211-12 (2d Cir. 2003); X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 56-66 (2d Cir. 1999)). Where the plaintiff alleges a violation of a clearly established federal right, "defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time." Varrone v. Bilotti, 123 F.3d 75, 78 (2d Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)).

Here, Rosen alleges that Hlatky violated his clearly established constitutional right by acting with deliberate indifference to his safety in failing to protect him from harm from other inmates. Defendants argue that Hlatky is entitled to qualified immunity because he shouted once to break up the fight and his actions were objectively reasonable under the circumstances. Dismissal on the basis of a qualified immunity defense is not appropriate, however, where there are facts in dispute that are material to a determination of reasonableness. See Thomas v. Roach, 165 F.3d 137, 143-45 (2d Cir. 1999); Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995). As discussed above, there are too many unresolved factual disputes for the Court to determine that Defendants have satisfied their burden of proving that Hlatky's actions were objectively reasonable. Therefore, the Court must deny

Defendants' motion for summary judgment as to the issue of qualified immunity.

2. Good Faith and Governmental Immunity

Good faith immunity under New York law provides that a government employee is immune from suit "for those government actions requiring expert judgment or the exercise of discretion ... when the action involves the conscious exercise of a judicial or quasi-judicial nature." Arteaga v. State of N.Y., 527 N.E.2d 1194, 1196 (1988). A government official is entitled to absolute immunity, as opposed to qualified immunity, when the "position entails making decisions of a judicial nature -- i.e., decisions requiring the application of governing rules to particular facts, an exercise of reasoned judgment which could typically produce different acceptable results." Id. at 1196 (quoting Tango v. Tulevech, 459 N.E.2d 182, 186 (1983)). When an officer receives qualified immunity, he is not shielded from suit where he has acted in bad faith or where he lacked a reasonable basis for his actions. See id.

Actions by correctional employees may be categorized as either discretionary or ministerial. An officer is not entitled to immunity for ministerial acts. Ministerial acts require "direct adherence to a governing rule or standard with a compulsory result." Id. at 1198 n.2. For example, a

failure to comply with established prison policy is a ministerial act not entitled to qualified immunity, see Gayle v. State of N.Y., 515 N.Y.S.2d 963, 964-65 (N.Y. Ct. Cl. 1987), whereas investigating alleged inmate infractions and determining disciplinary action are discretionary functions entitled to qualified immunity. See Arteaga, 527 N.E.2d at 1197-98.

Because there are disputed facts as to Hlatky's response to the fight, and the Court cannot determine whether Hlatky acted unreasonably or in bad faith, the Court cannot find as a matter of law that Hlatky or the City are entitled to immunity. See Tatum v. City of N.Y., No. 06 Civ. 4290, 2009 WL 124881, at *12 (S.D.N.Y. Jan. 20, 2009) ("Because there are disputed issues of fact regarding [plaintiff's] assault and battery claims and the reasonableness of [defendant's] related actions, the Court cannot find that as a matter of law that Defendants are entitled to good faith or governmental immunities on those claims."); Bradley v. City of N.Y., No. 04 Civ. 8411, 2007 WL 232945, at *12 (S.D.N.Y. Jan. 26, 2007) ("Because there are disputed issues of fact regarding the reasonableness of Defendants' actions and whether those actions were taken in bad faith, summary judgment is inappropriate on this issue."); Blake v. City of N.Y., No. 05 Civ. 6652, 2007 WL 1975570, at *5 (S.D.N.Y. July 3, 2007)

("For the same reasons discussed supra with respect to qualified immunity, genuine issues of material fact preclude good faith or governmental immunity." (emphasis omitted)). Accordingly, Defendants' motion for summary judgment with respect to state law immunity is denied.

### III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 27) of defendants the City of New York (the "City"); New York City Health and Hospitals Corporation; Prison Health Services, Inc.; New York City Department of Correction Commissioner Martin Horn ("Horn"); Corrections Officer Dennis Hlatky ("Hlatky"); Captain Yvette Ballard ("Ballard"); and John Doe, M.D., name being fictitious and unknown (collectively "Defendants"), is GRANTED with respect to claims brought by plaintiff Jesse Rosen ("Rosen") against Defendants for deliberate indifference to medical condition in violation of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983; and it is further

**ORDERED** that Defendants' motion (Docket No. 27) for summary judgment is GRANTED with respect to all claims against Ballard and Horn; and it is further

**ORDERED** that Defendants' motion (Docket No. 27) for summary judgment is GRANTED with respect to all claims of municipal liability, brought pursuant to 42 U.S.C. § 1983; and

it is further

**ORDERED** that Defendants' motion (Docket No. 27) for summary judgment is DENIED with respect to Rosen's claim of deliberate indifference to safety, in violation of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983; and it is further

**ORDERED** that Defendants' motion (Docket No. 27) for summary judgment is DENIED with respect to Rosen's negligence claims against Hlatky and the City; it is further

**ORDERED** that Defendants' motion (Docket No. 27) for summary judgment on qualified immunity grounds is DENIED; and it is further

**ORDERED** that Defendants' motion (Docket No. 27) for summary judgment on state law immunity grounds is DENIED; and it is further

**ORDERED** that a conference is scheduled for November 20, 2009 at 1:30 p.m. to discuss preparations for trial.

**SO ORDERED.**

Dated:   New York, New York
         27 October 2009

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　VICTOR MARRERO
　　　　　　　　　　　　　　　　　　　　　U.S.D.J.